UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Huntington National Bank, | Case No. 21-cv-2055 (WMW/JFD) |
| Plaintiff, | **ORDER** |
| v. | |
| Dignity Senior Living, LLC, and Albert Chen, | |
| Defendants. | |

Before the Court is Plaintiff's motion for default judgment against Defendants Dignity Senior Living, LLC (Dignity), and Albert Chen. (Dkt. 15.) For the reasons addressed below, the Court grants in part and denies in part the motion.

## BACKGROUND

Plaintiff Huntington National Bank (Huntington) is a national banking association and the successor-by-merger of TCF National Bank (TCF).[1] Dignity is a limited liability company with its principal place of business in Hawaii. Chen, a resident of Hawaii, is Dignity's sole member and president.

Huntington alleges that TCF entered into an Installment Payment Agreement (IPA) with Dignity for a financed amount of $97,291.12 to facilitate Dignity's purchase of certain software and equipment. Pursuant to the IPA, Dignity was required to make 48 monthly

---

[1] Huntington refers in its filings to Huntington and TCF collectively and interchangeably as "Creditor." When it is unclear to which entity Huntington refers, the Court uses the term "Creditor" so as to align with Huntington's allegations.

payments of $2,258.03 to TCF. The IPA also entitled TCF to obtain fees, costs and expenses associated with TCF's exercise of its rights and remedies under the IPA. The IPA was secured by a continuing guaranty (Guaranty) from Chen in favor of the Creditor. The Guaranty provided an absolute guaranty of full payment of all obligations that Dignity owed under the IPA and obligated Chen to pay all costs, fees and expenses incurred by the Creditors in connection with enforcing the Guaranty along with Dignity's other obligations.

Dignity defaulted on the IPA by failing to make a timely payment in July 2021. Huntington notified Defendants of the default in a letter dated August 27, 2021. On September 10, 2021, Huntington sent Defendants a second notice of default.

Huntington commenced this action on September 17, 2021, alleging breach of contract.[2] Huntington served Chen on September 17, 2021, and served Dignity on November 5, 2021. Huntington applied for entry of default on December 21, 2021, and the Clerk of Court entered default against Defendants on December 28, 2021. Neither Defendant has appeared in this case. Huntington now moves for a default judgment against Defendants.

## ANALYSIS

To obtain a default judgment, a party must follow a two-step process. The party seeking a default judgment first must obtain an entry of default from the Clerk of Court.

---

[2] The complaint also alleges unjust enrichment and promissory or equitable estoppel and asserts Huntington's rights to claim and delivery of collateral and priority liens. At the default-judgment hearing, however, Huntington indicated that it would not object to the Court entering judgment only on its breach-of-contract claim and dismissing its remaining claims.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, Huntington sought an entry of default, which the Clerk of Court entered against Defendants on December 28, 2021. The entry of default is supported by the record, which reflects that Defendants were properly served with the complaint and summons and failed to answer or otherwise respond to the complaint.

After default has been entered, the party seeking affirmative relief "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Upon default, the factual allegations in the complaint are deemed admitted except those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *accord Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). However, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray*, 595 F.3d at 871 (internal quotation marks omitted); *accord Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010).

### I.     Breach of Contract (Counts I and II)

Huntington alleges breach of contract by Dignity. Under Minnesota law,[3] the "elements of a breach of contract claim are (1) formation of a contract, (2) performance by

---

[3]     Huntington does not address choice of law in its memorandum in support of its motion for default. "A federal court sitting in diversity employs the choice of law principles of the forum state when deciding whether a contractual choice of law provision applies." *Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 865 (D. Minn. 2015). Minnesota generally enforces choice-of-law provisions, applying the substantive law agreed to by the parties. *Id.* at 866 (citing *Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 596

3

plaintiff of any conditions precedent to [the plaintiff's] right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).  Huntington alleges that Dignity and TCF entered into a contract, the IPA, pursuant to which TCF lent Dignity $97,291.12. Dignity defaulted under the IPA, Huntington alleges, by failing to make a required monthly payment due on July 16, 2021.  According to Huntington, failing to make a required monthly payment is an occurrence that entitles the Creditor to exercise all of its remedies under the contract, including accelerating the entire indebtedness.  Huntington alleges that Creditor provided notice to Dignity that the Creditor planned to exercise its right to accelerate the entire indebtedness and that, as of August 10, 2021, Dignity owed Creditor $95,709.95.  When accepted as true, the facts Huntington alleges in the complaint set forth a valid breach-of-contract claim against Dignity.  Huntington, therefore, has established that the unchallenged facts constitute a legitimate claim for breach of contract as to Dignity.

Huntington also alleges breach of contract by Chen.  Under the Guaranty, Huntington alleges, Chen is "unconditionally and absolutely liable for all amounts due and owing under the Guaranty and Credit Agreements."  The Guaranty provides that Chen also is liable for all costs and expenses incurred by the Creditor in connection with enforcing

---

(8th Cir. 2007)).  The IPA contains a choice-of-law provision, which provides that "this IPA, and all matters arising from this IPA including all interest and finance charges hereunder, shall be governed by, and construed in accordance with federal law and, to the extent not preempted by federal law, by the laws of the state of Minnesota (excluding conflicts laws.)."  The Guaranty also contains a choice-of-law provision that specifies that any dispute arising out of the Guaranty is to be governed by Minnesota law.  Accordingly, the Court applies Minnesota law to the claims in this action.

the Guaranty and Dignity's obligations thereunder. Dignity breached the IPA, Huntington alleges, by ceasing to make its monthly payment due on July 16, 2021. Huntington provided Chen notice of the default in both August and September 2021. According to Huntington, as of August 10, 2021, Dignity owed Huntington $95,709.95. Huntington alleges that Chen has failed and refused to pay the amounts owed under the IPA, thereby breaching the Guaranty. When accepted as true, the facts Huntington alleges in its complaint set forth a valid breach-of-contract claim against Chen. Huntington has established that the unchallenged facts constitute a legitimate claim for breach of contract as to Chen.

Accordingly, the Court grants Huntington's motion for default judgment as to Count I and Count II.

## II.     Damages

A district court also must ascertain the amount of damages before entering a default judgment. *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) ("[A] default judgment cannot be entered until the amount of damages has been ascertained." (internal quotation marks omitted)). A party seeking a default judgment must prove its damages to a reasonable degree of certainty. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001). A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly. *Pope v. United States*, 323 U.S. 1, 12 (1944).

Huntington alleges that Defendants owe $98,619.63 in actual damages as of May 3, 2022. Huntington first contends that Defendants owe $22,580.30 in damages for past due

5

payments, which represent ten installment payments of $2,258.03 each. This amount is supported by the IPA, which identifies the monthly payment amount as $2,258.03 and provides that, upon default, Huntington may "declare immediately due and payable and recover from Debtor, as liquidated damages and not as a penalty, the sum of all amounts then due." Dignity defaulted when it failed to make a monthly payment due on July 16, 2021. The amount Huntington requests in damages for past due payments represents the ten monthly payments Dignity failed to make from July 16, 2021, until April 16, 2022. Accordingly, Huntington has proved to a reasonable degree of certainty its entitlement to $22,580.30 in past-due monthly payments.

Huntington also contends that it is entitled to the present value of 34 future or accelerated monthly installments at an interest rate of 5.4 percent, totaling $71,223.17. The IPA provides that, upon default, Huntington may recover "all unpaid Payments for the remaining term of this IPA, discounted from their respective due dates at the implicit interest rate for this IPA, as conclusively determined based on the Financed Amount and the amount and timing of each Payment." The IPA provides for a 48-month loan term. The IPA also provides that "consecutive monthly installments each equal to the Payment Amount set forth above" will be due "beginning on the date that is one month after the Funding Date and then on the same day of each calendar month thereafter." The IPA does not specify the Funding Date, but Huntington attaches to its complaint a "Pay Proceeds and Acceptance Confirmation" (Confirmation), which is dated February 12, 2021, and confirms that Dignity accepted the equipment and software and authorizes Creditor to pay for those goods. Based on the Confirmation, it is reasonable to infer that the Funding Date

6

was on or about February 12, 2021, and that the first installment payment was due on or about March 12, 2021. Dignity defaulted on July 16, 2021. Accordingly, 44 payments remained due under the IPA at the time of default. As addressed above, Huntington is entitled to 10 overdue installment payments as of May 2022. Less those payments, Huntington is entitled to 34 future or accelerated payments, and Huntington provides an accounting of its calculation of the 5.4 percent implicit interest rate. Huntington has proved to a reasonable degree of certainty its entitlement to the present value of 34 future or accelerated monthly payments at an implicit interest rate of 5.4 percent, totaling $71,223.17.

      Huntington also contends that it is entitled to a 5 percent penalty on default. The IPA provides that Huntington is entitled to "a fee equal to 5%" of all unpaid payments for the remaining term of the IPA "if the Event of Default occurs during months 0 through 12." Here, as addressed above, Dignity defaulted four months into the loan term. Five percent of the total of the unpaid payments, $71,223.17, is $3,561.16. Huntington has proved to a reasonable degree of certainty its entitlement to a penalty totaling $3,561.16.

      Huntington contends that it is entitled to $120 in damages for returned ACH fees in connection with four monthly payments. The IPA requires Dignity to pay "all costs and expenses incurred by Creditor in the exercise of any right or remedy available to it under this IPA." But Huntington does not provide a receipt or any other documentation in support of its request for $120 in fees. For this reason, Huntington has not proved to a reasonable degree of certainty its entitlement to $120 in damages.

Huntington also contends that it is entitled to $1,135 in damages for late fees. The IPA provides that if "any amount payable hereunder is not paid within ten (10) days of its due date, Creditor may impose a late fee of up to 10% of the amount of the past due payment." As addressed above, Dignity has failed to pay ten monthly payments totaling $22,580.30. Late fees of $1,135 equal approximately 5.03 percent of the total amount of overdue payments. Huntington has proved to a reasonable degree of certainty its entitlement to late fees totaling $1,135.

In summary, Huntington has established to a reasonable degree of certainty that it is entitled to $98,499.63 in actual damages.

### III. Attorneys' Fees

Huntington seeks $9,167.20 in attorneys' fees and expenses, to which Huntington argues it is entitled under the IPA. Minnesota law recognizes the freedom of contracting parties to bargain for the remedy of attorneys' fees. *See State Bank of Cokato v. Ziehwein*, 510 N.W.2d 268, 270 (Minn. Ct. App. 1994). Minnesota courts enforce contractual obligations to pay attorneys' fees if the amount of fees allowed under the contract is reasonable. *Id.* The IPA provides that Huntington may "recover from Debtor, and Debtor agrees to pay, all costs and expenses incurred by Creditor in the exercise of any right or remedy available to it under this IPA, including . . . costs of obtaining money damages and attorneys' fees and expenses for any purpose related to this IPA."

Courts apply the lodestar method to calculate reasonable attorneys' fees. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996). Under this method, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *McDonald v. Armontrout*,

8

860 F.2d 1456, 1458 (8th Cir. 1988).  To calculate the lodestar amount, a district court multiplies the number of hours reasonably expended by a reasonable hourly rate, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), which is "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The party seeking an award of attorneys' fees bears the burden to establish entitlement to them with documentation that addresses the nature of the work and the appropriateness of the hourly rates and hours expended.  *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

Here, Huntington does not provide billing records substantiating its claimed attorneys' fees and costs.  Huntington also does not identify the attorneys who worked on this case, their individualized experience or their hourly rates.  And Huntington does not provide the number of hours its attorneys expended.  Huntington states that it is willing to provide the Court with its attorneys' invoices for an *in camera* review but provides no justification for why it did not submit these records with its motion.  Because Huntington has failed to establish its entitlement to attorneys' fees, the Court denies Huntington's request for attorneys' fees and costs.

**IV.    Post-Judgment Interest**

Huntington also requests post-judgment interest.  A prevailing party has a right to post-judgment interest under 28 U.S.C. § 1961.  Post-judgment interest begins to accrue on the day judgment is entered and accrues on a plaintiff's total award, including costs and attorneys' fees, until the judgment is satisfied. *Jenkins by Agyei v. Missouri*, 931 F.2d

9

1273, 1275 (8th Cir. 1991) ("The phrase 'any money judgment' in section 1961(a) is construed as including a judgment awarding attorneys' fees."); *see, e.g.*, *Minn. Voters All. v. City of Saint Paul*, No. 19-cv-0358 (WMW/HB), 2021 WL 1100901, at *7 (D. Minn. Mar. 23, 2021). Under Section 1961(a), post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a). The Court, therefore, awards post-judgment interest at the rate set by Section 1961(a).

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.  Plaintiff Huntington National Bank's motion for default judgment, (Dkt. 15), is **GRANTED** as to Counts I and II.

2.  Counts III, IV, V and VI of Plaintiff Huntington National Bank's complaint, (Dkt. 1), are **DISMISSED WITHOUT PREJUDICE**.

3.  The Clerk of Court shall enter judgment in the amount of $98,499.63, plus post-judgment interest as calculated pursuant to 28 U.S.C. § 1961(a), against Defendants Dignity Senior Living, LLC, and Albert Chen and in favor of Plaintiff Huntington National Bank.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 2, 2022                         s/Wilhelmina M. Wright
                                                                        Wilhelmina M. Wright
                                                                        United States District Judge